NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5761-12T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

  v.

PEDRO PERALTA,

      Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **October 31, 2014**
>
> **APPELLATE DIVISION**

Argued October 21, 2014 — Decided October 31, 2014

Before Judges Fisher, Accurso and Manahan.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Municipal Appeal No. 6049.

Scott C. Buerkle argued the cause for appellant (The Buerkle Law Firm, attorneys; Mr. Buerkle, on the brief).

Sara B. Liebman, Special Deputy Attor-ney General/Acting Assistant Prosecutor, argued the cause for respondent (Grace H. Park, Acting Union County Prosecutor, attorney; Ms. Liebman, of counsel).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we consider the alleged failure of police to read to defendant, who had been arrested for driving while intoxicated (DWI), the standard statement advising of the

consequences of refusing to provide a breath sample. We conclude, as did the trial court, that this failure was not fatal to the DWI prosecution for the simple reason that defendant did not refuse to provide a breath sample.

On November 6, 2011, defendant was arrested and charged with DWI, N.J.S.A. 39:4-50(a).[1] At the conclusion of a municipal trial, the judge determined that the police officer's observations of defendant before and during the field sobriety test established probable cause to conduct a breathalyzer test, but he also found those observations were not sufficiently convincing to support a DWI conviction. The judge, however, convicted defendant of DWI on the basis of breathalyzer evidence, which demonstrated defendant's blood alcohol content (BAC) was 0.19, well in excess of the 0.08 legal limit, N.J.S.A. 39:4-50(a). Defendant was sentenced as a second-time DWI offender, and the judge imposed: fines, court costs, and other monetary penalties; thirty days of community service; two days of jail time; a two-year suspension of defendant's driving privileges; and a requirement that an interlock device be installed and remain in defendant's vehicle for two years.

---

[1] Defendant was also charged and convicted of careless driving, which merged with the DWI conviction for sentencing purposes.

Defendant appealed to the Law Division. He also applied for, and was granted, a stay of the suspension of his driving privileges. The Law Division judge convicted defendant based on the BAC reading and imposed the same sentence. The judge also stayed defendant's sentence pending appeal.

In this appeal, defendant seeks reversal of his DWI conviction because he claims the standard statement was not read to him prior to the administration of the Alcotest and because the police officer's observations failed to prove beyond a reasonable doubt that defendant was intoxicated. The latter point is irrelevant; defendant was not convicted on the basis of the officer's observations. We, thus, turn to the first point — that the conviction cannot stand because the police officer failed to read to defendant the statement ("the statutory statement") referred to in N.J.S.A. 39:4-50.2(e).[2]

Although the record is not clear on this point, we assume for purposes of this appeal that the statutory statement was not

---

[2] N.J.S.A. 39:4-50.2(e) states that "[t]he police officer shall . . . inform the person arrested of the consequences of refusing to submit to such test in accordance with [N.J.S.A. 39:4-50.4a]. A standard statement, prepared by the chief administrator [of the Motor Vehicle Commission], shall be read by the police officer to the person under arrest." As a result of Governor Corzine's 2009 reorganization order, the authority to prepare the statement was taken from the MVC and placed with the Attorney General.

read to defendant.[3]  We agree with the Law Division judge that an officer's failure to read the statutory statement is irrelevant when the accused submits to the test.

In the Law Division, defendant argued — and reprises that argument here — that an unpublished opinion of this court holds otherwise.[4]  Indeed, in that case, the panel reversed a DWI conviction which was based on breathalyzer evidence because the State failed to prove the statutory statement was read to the defendant even though there was no refusal; the panel held that the State must "establish the requisite fact of an accurate reading of the proper statement beyond a reasonable doubt."  The trial judge, however, was not bound by the unpublished opinion, <u>see</u> <u>R.</u> 1:36-3 (declaring "[n]o unpublished opinion shall constitute precedent or be binding upon any court"), and neither are we, nor would we be bound even if it had been published, <u>see</u>

_____

[3]At the municipal trial, the State offered no evidence that the statutory statement was read to defendant, and defendant did not testify.  The issue did not surface until defendant's attorney at the time raised it during his closing argument.  In the Law Division, the State sought to supplement the record with testimony from an officer that the statement was read to defendant in Spanish.  The Law Division judge denied that application, leaving the record silent on this factual matter.

[4]Because, with a few exceptions inapplicable here, <u>Rule</u> 1:36-3 prohibits our citation to unpublished opinions, we do not identify the unpublished opinion cited by the parties and discussed by the municipal and Law Division judges in this matter.  <u>Mt. Holly Twp. Bd. of Educ. v. Mt. Holly Twp. Educ. Ass'n</u>, 199 <u>N.J.</u> 319, 332 n.2 (2009).

Brundage v. Estate of Carambio, 195 N.J. 575, 593-94 (2008) (recognizing that "the decision of one appellate panel" is not "binding upon another panel of the Appellate Division").

But, more importantly, we disagree with the holding attributed to the unpublished opinion and reject the argument that the failure to read the statutory statement matters when an accused consents to providing a breath sample. To be sure, the reading of the statutory statement is critical to a prosecution for refusing to give a sample, see State v. Marquez, 202 N.J. 485, 501-02 (2010), but its significance elsewhere mainly lies only with its potential for securing an accused's consent when an equivocal response is first given, see State v. Spell, 395 N.J. Super. 337, 344 (App. Div. 2007), aff'd in part, mod. in part, 196 N.J. 537, 539 (2008). The statutory statement is inessential when consent is given.

That is, the mandate that the statutory statement be read to an accused is part of a legislative framework that revolves around the declaration that, by operating a vehicle on our roadways, a driver "shall be deemed to have given his consent to the taking of samples of his breath" for the purpose of determining his blood alcohol content. N.J.S.A. 39:4-50.2(a). In short, a driver has no right to refuse a request, and it is in this context that the Legislature provided that a "standard

statement . . . shall be read by the police officer to the person under arrest" advising of the consequences of refusal. N.J.S.A. 39:4-50.2(e). When this last provision is read in the context of its neighboring provisions, see Brown v. Brown, 86 N.J. 565, 577 (1981) (recognizing that, in interpreting an enactment, "[e]ach subsection should be read with respect to the subject matter of the others and in harmony with each other and with the whole"), all of which are related to the consequences of an accused's refusal to provide a sample, see Marquez, supra, 202 N.J. at 501-02, it becomes readily apparent the statute was not intended to impose on the State the burden of proving, beyond a reasonable doubt, the reading of the statement in a DWI prosecution where the accused provided a breath sample on request.[5]

Although there is a relationship between the drunk-driving laws and the refusal statutes, their primary goals are different. The requirement that a statement be read to the

_____

[5]At oral argument, defendant took an alternate tack, arguing that if not an element of the offense, a police officer's failure to read the statutory statement to an accused provides a ground for excluding the breathalyzer results. We need not consider this question because defendant never moved for suppression of that evidence in the trial court. See R. 3:5-7(f); see also State v. Macon, 57 N.J. 325, 333 (1971); State v. Jenkins, 221 N.J. Super. 286, 292-93 (App. Div. 1987), certif. denied, 113 N.J. 343 (1988), cert. denied, 488 U.S. 1032, 109 S. Ct. 843, 102 L. Ed. 2d 975 (1989).

accused explaining the consequences of a refusal was enacted to redress the fact that previously drivers "did not have to submit to blood-alcohol tests and faced no penalties if they refused to do so."  Marquez, supra, 202 N.J. at 497.  There is nothing in that statutory framework, however, that would suggest the Legislature intended to impose an additional burden on the prosecution of the drunk driving laws, the primary goal of which is "to curb the senseless havoc and destruction caused by intoxicated drivers."  State v. Tischio, 107 N.J. 504, 512 (1987).  Consequently, we reject the argument, supported only by the non-precedential opinion relied upon by defendant, that the State must prove "an accurate reading of the proper statement beyond a reasonable doubt" in all DWI prosecutions based on a breath sample given by consent.[6]

---

[6]We recognize that the statutory statement also provides advice for those who do not refuse by informing of the right to a copy of the testing record and the right to give, at the accused's own expense, an independent breath sample to a person or physician of the accused's choosing.  The bundling of the rights accruing when consent is given with the rights pertaining to a refusal somewhat confounds the issue, providing defendant with a facile — and superficial — ground upon which to challenge his conviction.  We find no merit in the contention that the State must prove the reading of the statement's many paragraphs regarding refusal when the accused has freely consented to give the sample.  And, by the same token, there seems no point in counseling an accused about the rights accruing when a sample is given when the accused has refused to give a sample.  Logic might suggest there should be two statements, one for those who have expressed a refusal to give the sample and one for those
(continued)

Affirmed.  The stay of the sentence pending appeal is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

(continued)
who consent; the content of the statutory statement, however, is a matter for the Attorney General, not this court.